UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES MICHALSKI, <br> 7220 MIDDLE RIDGE RD <br> MADISON, OH 44057 <br><br> Plaintiff, <br><br> vs. <br><br> JOHN KLOSKI, <br> 2065 HUBBARD RD <br> MADISON, OH 44057 <br><br> LT. ELIZABETH KIRK, <br> 2065 HUBBARD RD <br> MADISON, OH 44057 <br><br> CHIEF TROY HAGER, <br> 2065 HUBBARD RD <br> MADISON, OH 44057 <br><br> THOMAS M. SILL, <br> 2065 HUBBARD RD, <br> MADISON, OH 44057 <br><br> MAX ANDERSON, Jr., <br> 2065 HUBBARD RD <br> MADISON, OH 44057 <br><br> TIM BROWN, <br> 2065 HUBBARD RD <br> MADISON, OH 44057 <br><br> PETE V. WAYMAN, <br> 2065 HUBBARD RD <br> MADISON, OH 44057 <br> and, <br> MADISON TOWNSHIP, <br><br> Defendants. | CASE NO._____ <br><br> **PLAINTIFF'S COMPLAINT** |

# COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

## PRELIMINARY STATEMENT AND DEMAND FOR JURY TRIAL

Plaintiff, James Michalski, by and through his undersigned counsel, herby files the following Complaint in Civil Action, and in support thereof, avers as follows: This is a civil rights action brought under 42 U.S.C. § 1983 seeking monetary damages, declaratory and injunctive relief for Defendants' violation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiff seeks redress for Defendants' retaliatory criminal prosecution against him in response to his constitutionally protected speech, which violated his First Amendment rights. The Plaintiff demands a jury trial on all issues so triable.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), as this action arises under the Constitution and laws of the United States.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within this judicial district.

## PARTIES

3. Paragraphs one (1) through two (2) are incorporated by reference as though fully set forth herein.

4. James Michalski ("Plaintiff") is an individual residing at 7220 Middle Ridge Road, Madison, Ohio 44057, within Lake County, Ohio.

5. John Kloski ("Defendant Kloski") is sued in his individual and official capacities as a Dispatcher of Madison Township. At all times relevant to this Complaint, he was acting under color of state law.

6. Lt. Elizabeth Kirk ("Defendant Kirk") is sued in her individual and official capacities as a police officer of Madison Township. At all times relevant to this Complaint, she was acting under color of state law.

7. Chief Troy Hager ("Defendant Hager") is sued in his individual and official capacities as Police Chief of Madison Township Police Department. At all times relevant to this Complaint, he was acting under color of state law.

8. Thomas M. Sill ("Defendant Sill") is sued in his individual and official capacities as Trustee of Madison Township. At all times relevant to this Complaint, he was acting under color of state law.

9. Max Anderson, Jr. ("Defendant Anderson") is sued in his individual and official capacities as Trustee of Madison Township. At all times relevant to this Complaint, he was acting under color of state law.

10. Pete V. Wayman ("Defendant Wayman") is sued in his individual and official capacities as Trustee of Madison Township. At all times relevant to this Complaint, he was acting under color of state law.

11. Tim Brown ("Defendant Brown") is sued in his individual and official capacities as Administrator of Madison Township. At all times relevant to this Complaint, he was acting under color of state law.

12. Madison Township ("Defendant Township") is a political subdivision of the State of Ohio located in Lake County, Ohio, and is a "person" within the meaning of 42 U.S.C. § 1983.

## STATEMENT OF FACTS

**A. Background**

13. Paragraphs one (1) through twelve (12) are incorporated by reference as though fully set forth herein.

14. H.R.218, better known as the Law Enforcement Officers Safety Act of 2004 ("LEOSA"), authorizes qualified law enforcement officers, including retired officers, to carry a concealed firearm if issued an appropriate government-issued identification card.

15. Subsection 926C(d)(1)-(2A) of the LEOSA requires the identification card to be issued by the agency from which the individual retired from service as a law enforcement officer.

16. Over a year before the events of August 18, 2024 which led to the retaliatory charges against the Plaintiff, the Defendant Township held a trustee meeting at which Defendants Gaunter, Anderson, and Wayman were in attendance in their capacity as Defendant Township trustees.

17. The Plaintiff attended that meeting, and as a result of events during the meeting, felt threatened by Defendant Anderson, and that Defendant Anderson was inclined to use violence against the Plaintiff through the use of a concealed handgun.

18. After reporting the matter to the Defendant Township police department, the Plaintiff was informed by the Defendant Township police department that Defendant Anderson was authorized to carry a concealed handgun through a permit issued under LEOSA.

19. Plaintiff then engaged in constitutionally protected speech by making a public records request to the Defendant Township as to any permits issued under LEOSA by the Defendant Township to Defendant Anderson.

20. The Defendant Township has failed to provide any records that indicate Defendant Anderson was issued a LEOSA identification card through the Defendant Township, as claimed by Defendant Township police officers.

21. On or about July 18, 2024, the Plaintiff engaged in constitutionally protected speech when he called the Defendant Township police office, requesting to come physically inspect the records held by Defendant Township regarding the issuance of LEOSA permits.

22. During the phone call, Defendant Township employee informed the Plaintiff that there was no record of a permit being issued to Defendant Anderson and that this corresponded with previous records shared with the Plaintiff by the Defendant Township.

23. The Plaintiff then inquired as to why there was such a permit issued to Defendant Anderson, and stated that because the permit issued to Defendant Anderson came from the Defendant Township, then there must be a record supporting its issuance.

24. Defendant Kirk stated that the Defendant Township was not responsible for the issuance of the identification card for retired police officers and abruptly ended the phone call.

25. Before the recording ended, the Plaintiff could be heard to make a profane comment directed towards the Defendant Kirk, which no reasonable person would assume was threatening.

26. On or about July 18, 2024, shortly after the conversation between the Plaintiff and Defendant Kirk, Defendant Hager called the Plaintiff and left a voicemail on the Plaintiff's phone.

27. Defendant Hager's message stated that he was aware of the profane language that the Plaintiff had used on the previous call and that he would be turning the phone records over to the Defendant Townships prosecutor's office, stating that the Plaintiff may face charges of telephone harassment.

28. Defendant Hager specifically stated that if the Plaintiff continued to call the police office "creating a disturbance", "call or harass my employees", or "call them names", Defendant Hager would seek charges.

29. On or about August 18, 2024, the Plaintiff called the Defendant Township police office again to inquire if any charges were going to be brought by the Defendant Township stemming from the call of July 17, 2024.

30. During the phone conversation, Defendant Kloski informed the Plaintiff that the charges had been turned over to the Defendant Township's prosecutor, and that the Plaintiff should contact the prosecutor for more information.

31. When asked by the Plaintiff to identify himself, Defendant Kloski refused to state his name, referring to himself as MA 51.

32. While on the line with Defendant Kloski, the Plaintiff complained about his treatment by the Defendant Township and its employees, including the use of profane language, which was not directed in a threatening manner towards any individual employed by the Defendant Township.

33. On or about August 19, 2024, the Plaintiff called the Defendant Township a second time, with Defendant Kloski again answering the call.

34. The Plaintiff informed Defendant Kloski that he had just spoken with the Defendant Township's prosecutor and that said prosecutor had "nothing to do with it".

35. Defendant Kloski then directed the call to Defendant Hager's voicemail.

36. The Plaintiff called back the Defendant Township's police office and asked Defendant Kloski who had directed him to send the call to Defendant Hager's voicemail.

37. Defendant Kloski stated that it was his decision, and after further exchange with the Plaintiff, Defendant Kloski hung up on the Plaintiff.

38. The Plaintiff called back again to inquire who told Defendant Kloski to tell the Plaintiff to contact the Defendant Township's prosecutor.

39. Defendant Kloski refused to answer the Plaintiff and informed him that if he called back he would be charged with harassment and that Defendant Kloski and the Defendant Township were "well aware of" the Plaintiff.

40. The Plaintiff's speech involved matters of public concern and was protected by the First Amendment to the United States Constitution.

41. The Defendants disagreed with and were displeased by Plaintiff's protected speech.

B. The Retaliatory Prosecution

42. In retaliation for Plaintiff's protected speech, Defendants initiated criminal proceedings against Plaintiff.

43. On or about October 7, 2024, a criminal complaint was filed against Plaintiff in the Painesville Municipal Court charging him with: Telecommunications Harassment, a first degree misdemeanor, alleging that on August 19, 2024, Plaintiff "knowingly made or

caused to be made a telecommunication" to Defendant Kloski "with purpose to harass or abuse"; and 2) Disrupting Public Services a fourth degree felony, alleging that Plaintiff "purposely by any means or knowingly by damaging or tampering with any property, did interrupt or impair... communications."

44. The criminal charges were baseless and were brought in retaliation for Plaintiff's protected speech rather than for any legitimate law enforcement purpose.

45. Plaintiff was subjected to the criminal justice process, including arraignment, preliminary hearings, and the threat of prosecution.

46. The case was bound over to the Lake County Court of Common Pleas where it was assigned case numbers 24CR001417 and 24CR001418.

47. On May 30, 2025, a Grand Jury reviewed the charges against Plaintiff and returned a "No True Bill," declining to indict Plaintiff on either charge.

48. The Grand Jury's refusal to indict demonstrates the lack of merit in the criminal charges and supports the conclusion that they were brought in retaliation for Plaintiff's protected speech.

C. **Defendants' Retaliatory Intent**

49. The timing, context, and lack of merit of the criminal charges demonstrate that they were brought in retaliation for Plaintiff's constitutionally protected speech.

50. Defendants' actions were motivated by their disagreement with and desire to punish Plaintiff for his protected speech.

51. No reasonable official in Defendants' position would have believed that Plaintiff's conduct constituted criminal activity.

## COUNT I

### FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

52. Paragraphs one (1) through fifty-one (51) are incorporated by reference as though fully set forth herein.

53. Plaintiff's public records request was protected by the First Amendment to the United States Constitution.

54. Plaintiff's use of profane language in criticism of government officials was protected speech under the First Amendment of the United States Constitution.

55. Defendants' initiation of criminal proceedings against Plaintiff constituted adverse action that would deter a person from engaging in protected speech.

56. Plaintiff's protected speech was a motivating factor in Defendants' decision to initiate criminal proceedings against him.

57. Defendants would not have initiated criminal proceedings against Plaintiff but for his protected speech.

58. The criminal charges lacked probable cause, as evidenced by the Grand Jury's refusal to indict.

59. Defendants' conduct violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

60. Defendants acted under color of state law, namely R.C. 2917.21 and R.C. 2909.04 in violating Plaintiff's constitutional rights.

61. Alternatively, under *Gonzalez v. Trevino*, Plaintiff can demonstrate that similarly situated individuals who did not engage in protected speech were not subjected to criminal prosecution under similar circumstances.

62. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff has suffered and continues to suffer damages including but not limited to: violation of his constitutional rights, emotional distress, anxiety, and mental anguish, damage to his reputation, attorney's fees and costs, loss of time and disruption to his life and chilling of his future exercise of First Amendment rights.

## COUNT II

### MUNICIPAL LIABILITY (42 U.S.C. § 1983)

63. Paragraphs one (1) through sixty-two (62) are incorporated by reference as though fully set forth herein.

64. Defendant Township, through its official polices, customs, and practices, violated the Plaintiffs rights under the First Amendment of the United States Constitution.

65. The constitutional violations were committed under an official township policy or a custom so well settled as to have the force of law.

66. Alternatively, the Defendant Township acted through an official with final decision-making authority who ratified the illegal retaliation against the Plaintiff for exercising his protected rights.

67. Alternatively, the nature of the Defendant Township's dispatchers and police officers' work is such that it is obvious that they require training in engaging in civil discourse with citizens of the township, the inadequacy of which would likely result in a violation of constitutional rights.

68. Defendant Township acted with deliberate indifference to the Plaintiff's constitutional rights by maintaining policies and customs, including Defendant Township's failure to train its employees and allowing an official with final decision-making authority to ratify

an illegal retaliation against the Plaintiff, resulting in a predictable violation of the Plaintiff's First Amendment rights.

69. The Defendant Township's policies and customs were the moving force behind the constitutional violations suffered by the Plaintiff.

70. As a direct and proximate result of the Defendant Township's unconstitutional policies and customs, the Plaintiff suffered violations of his constitutional rights and associated damages as described above.

## COUNT III

### CONSPIRACY TO VIOLATE CIVIL RIGHTS (42 U.S.C. § 1983)

71. Paragraphs one (1) through seventy (70) are incorporated by reference as though fully set forth herein.

72. Defendants conspired among themselves to deprive Plaintiff of his constitutional rights by retaliating against him for his protected speech.

73. Defendants reached an understanding to initiate baseless criminal proceedings against Plaintiff in retaliation for his protected speech.

74. Each Defendant was a willful participant in a joint activity to violate Plaintiff's constitutional rights.

75. Defendants took overt acts in furtherance of the conspiracy, including filing criminal charges against Plaintiff.

76. As a direct and proximate result of Defendants' conspiracy, the Plaintiff suffered violations of his constitutional rights and associated damages as described above.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Plaintiff's actions were protected under the First and Fourteenth Amendments and that the Defendants' actions violated those rights.

B. Award compensatory damages in an amount to be determined at trial.

C. Award punitive damages against individual Defendants in their personal capacities.

D. Award Plaintiff his reasonable attorney's fees and costs under 42 U.S.C § 1988.

E. Grant such other relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Michelle Goldstein*
Michelle Goldstein (#103243)
8759 Mayfield Road
Chesterland, Ohio 44026
meglaw4u@gmail.com
818-720-6323